Larry WILLIAMS, Petitioner–Appellee,

v.

John P. WHITLEY, Warden, Louisiana
State Penitentiary, Respondent–
Appellant.

John FULFORD, Petitioner–Appellant,

v.

John P. WHITLEY, Warden, Louisiana
State Penitentiary, Respondent–
Appellee.

Nos. 92–3361, 92–4008.

United States Court of Appeals,
Fifth Circuit.

June 21, 1993.

Order Granting Rehearing En Banc
in No. 92–4008 July 20, 1993.

Terry M. Boudreaux, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna, LA, for John P. Whitley in No. 92–3361.

Professor David Gruning, Loyola Law School, New Orleans, LA (Court-appointed), for Larry Williams.

Professor David Gruning, Loyola Law School, New Orleans, LA (Court-appointed), for John Fulford.

Jack Peebles, Asst. Dist. Atty., New Orleans, LA, for John P. Whitley in No. 92–4008.

Before WISDOM,[*] GARWOOD, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This consolidated appeal raises an important question concerning the scope of federal habeas corpus, the retroactivity of *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Petitioners Larry Williams and John Fulford were convicted in Louisiana state court in the early 1970's and are presently serving life sentences in the state penitentiary. They have each filed federal habeas petitions attacking their twenty year-old convictions on grounds that the automatic exemption from jury service granted women under state law at the time of their trials deprived them of their Sixth Amendment right to a trial by a jury venire drawn from a fair cross-section of the community. Williams' and Fulford's appeals were pending before the Louisiana Supreme Court when Louisiana's exclusionary practice was invalidated in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). They did not receive the benefit of *Taylor*'s holding, however, as the Supreme Court one week later declined to give this new rule any retroactive effect. *Daniel v. Louisiana*, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975).

The Supreme Court abandoned the retroactivity approach employed in *Daniel* in *Griffith* and *Teague*, which together direct courts to apply new rules without exception to all cases pending on direct appeal at the time of the decision. Because *Taylor* was handed down while their appeals were before the Louisiana Supreme Court, Fulford and Williams maintain that they should be given the benefit of its holding. Put another way, they contend that *Griffith*'s retroactivity rule is itself retroactive and, properly interpreted, overrules the results obtained under *Daniel* as well as its rationale; that *Griffith* not only establishes a new retroactivity test but also upsets every conviction affirmed on the basis of the discarded *Daniel* approach.

Williams and Fulford rely almost exclusively on *Leichman v. Secretary*, 939 F.2d 315 (5th Cir.1991), where a prior panel of this court accepted this very argument and granted relief to a similarly situated Louisiana petitioner. As we will explain, we do not find the analysis urged by Williams and Fulford and adopted by the *Leichman* court to be free of difficulty. We are of course at this stage bound by the decision of the prior panel and, provided the other requirements are met, are bound to grant relief to petitioners presenting this issue.

Only Fulford's claim is properly before us, however. Both Williams and Fulford have filed multiple federal habeas petitions during their twenty years of incarceration. Williams' petition in particular is arguably both successive *and* an abuse of the writ. Because the Williams' failure to assert new or different grounds for relief was properly raised below, we REVERSE the district court's grant of relief and REMAND with instructions to dismiss his petition. With regard to Fulford, we REVERSE the district court's denial of relief and GRANT the petition for writ of habeas corpus.

I.

Williams' and Fulford's petitions have similarly lengthy procedural histories. At the time of their criminal trials in Louisiana state court the state constitution provided that "no woman shall be drawn for jury service unless

[*] Because of illness, Judge John Minor Wisdom was not present at the oral argument of this case; however, having had available the tape of oral argument, he participated in this decision.

she shall have previously filed with the clerk of the District Court a written declaration of her desire to be subject to such service." La. Const., Art. VII, § 41.[1] As a consequence of this provision, Williams' 1973 conviction on charges of aggravated rape and Fulford's 1972 murder conviction were each obtained after trials before juries selected from an all-male venire.

Williams and Fulford both appealed their convictions. While their cases were pending before the Louisiana Supreme Court, the U.S. Supreme Court struck down Louisiana's automatic exemption for women jurors as violative of defendants' Sixth Amendment rights to a trial by a jury venire drawn from a cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). The Court, however, held that *Taylor* would not be applied retroactively to "convictions obtained by juries empaneled prior to the date of [*Taylor*]." *Daniel v. Louisiana*, 420 U.S. 31, 32, 95 S.Ct. 704, 705, 42 L.Ed.2d 790 (1975). Since Williams and Fulford had been tried before *Taylor* was decided, the Louisiana Supreme Court affirmed their convictions. *State v. Nix*, 327 So.2d 301 (La.1975), *cert. denied sub nom. Fulford v. Louisiana*, 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198 (1976); *State v. Williams*, 310 So.2d 528 (La.1975).

Fulford's first application for post-conviction relief in Louisiana state court did not include a challenge to the composition of his venire. After the Louisiana Supreme Court affirmed the district court's dismissal of this application, Fulford filed a federal habeas petition in the U.S. District Court for the Western District of Louisiana. This petition advanced eight grounds for relief, but again omitted a *Taylor* claim. The district court denied Fulford's petition on October 27, 1980. This court vacated and remanded in *Fulford v. Maggio*, 692 F.2d 354 (5th Cir.1982). After the Supreme Court reversed our remand order, *Maggio v. Fulford*, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983), we affirmed the district court's denial of relief. *Fulford v. Maggio*, 715 F.2d 162 (5th Cir.

1983). Fulford also failed to assert a *Taylor* claim in a second federal habeas petition filed in 1985. The district court's denial of relief was affirmed by this court. The Supreme Court once more denied certiorari. *Fulford v. Blackburn*, 475 U.S. 1088, 106 S.Ct. 1476, 89 L.Ed.2d 730 (1986).

In contrast with Fulford, Williams challenged the exclusion of women from his venire in his first federal habeas petition in the U.S. District Court for the Eastern District of Louisiana. The district court dismissed his petition and this court, citing *Daniel*, affirmed in an unpublished opinion. *Williams v. Louisiana*, 611 F.2d 881 (5th Cir.), *cert. denied*, 447 U.S. 909, 100 S.Ct. 2995, 64 L.Ed.2d 859 (1980). Williams' second federal habeas petition, filed in 1984, did not include a *Taylor* claim. After the state waived the exhaustion requirement, the district court denied this petition as well. *Williams v. Maggio*, No. 84–0833 (E.D.La. 1984).

In 1987 the Supreme Court overruled some twenty years of retroactivity jurisprudence in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In applying the test set out in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court in *Daniel* declined to give *Taylor* retroactive effect on grounds that the exclusion of women from the venire did not necessarily render the prior trials unfair and that state officials had relied on prior decision permitting this practice in structuring their criminal justice systems. 420 U.S. at 32–33, 95 S.Ct. at 705. The Court in *Griffith* rejected this particularistic focus on the purpose of the new rule and the state's reliance interests, holding instead that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to *all* cases, state or federal, pending on direct review or not yet final." 479 U.S. at 328, 107 S.Ct. at 716 (emphasis added).

---

1. The Louisiana Code of Criminal Procedure contained a similar provision: "A woman shall not be selected for jury service unless she has previously filed with the clerk of court of the parish in which she resides a written declaration of her desire to be subject to jury service." La. Code.Crim.P., Art. 402. Both of these provisions were repealed, effective January 1, 1975.

Fulford and Williams then renewed their efforts to obtain relief on collateral review. Recognizing that they would have been entitled to new trials had *Griffith* governed questions of retroactivity at the time *Taylor* was decided, they asserted they should *now* be given the benefit of that decision because *Griffith* had "overruled" *Daniel.* Fulford filed his second state habeas application in 1987, challenging for the first time the exclusion of women from the jury venire. His petition was again denied. *State ex rel. Fulford v. Butler,* 526 So.2d 790 (La.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2104, 104 L.Ed.2d 665 (1989). Fulford advanced his *Taylor* claim in a second federal petition in the U.S. District Court for the Western District of Louisiana. The district court dismissed the petition and this court denied a certificate of probable cause. The Supreme Court again denied certiorari. *Fulford v. Whitley,* 498 U.S. 970, 111 S.Ct. 437, 112 L.Ed.2d 420 (1990).

In *Leichman v. Secretary,* 939 F.2d 315 (5th Cir.1991), a panel of this court accepted the same *Taylor/Griffith* argument that Fulford had unsuccessfully pressed. In December 1991, over one and a half years after the district court had first denied his petition, Fulford attempted to gain the benefit of *Leichman* by filing what he described as a "Motion for Reconsideration of Denial of Writ of Habeas Corpus." The district court denied this motion without opinion. Williams, on the other hand, filed a third habeas petition, reasserting the *Taylor* claim that had been raised in his first petition but omitted in the second. The district court declined to dismiss Williams' claim as successive and, noting that it was bound by *Leich-*

*man,* granted the writ. The state then appealed to this court. After we reversed the district court's denial of Fulford's motion for certificate of probable cause on the basis of *Leichman* in July 1992, the two cases were consolidated for purposes of this appeal and counsel was appointed.

## II.

 Williams' and Fulford's multiple federal habeas petitions plainly implicate the strictures on the writ imposed by Rule 9(b), which provides:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Rules Governing § 2254 Proceedings, 28 U.S.C. § 2254 foll. *See also* 28 U.S.C. § 2244(b). As the foregoing summary discloses, it is undisputed that Williams challenged the exclusion of women from the venire in his first federal petition and that Fulford, conversely, failed to include a *Taylor* claim in his first petition. Their current petitions are therefore susceptible to dismissal as, respectively, successive (Williams) and an abuse of the writ (Fulford). The state candidly concedes, however, that it failed to plead abuse of the writ in Fulford's case below. For this reason, only Williams' petition may be examined for its compliance with Rule 9(b)'s threshold requirements.[2]

---

2. The state maintains that Fulford's "motion for reconsideration" urging the district court to re-examine its prior rejection of his *Taylor* claim should be treated as a separate habeas petition subject to dismissal under Rule 9(b) as successive. While habeas petitioners filing such motions frequently invoke Fed.R.Civ.P. 60(b), we have previously indicated that the formal label affixed to petitions for relief from final judgment is not necessarily dispositive. *See, e.g., United States v. Reyes,* 945 F.2d 862, 864 (5th Cir.1991) ("because Reyes' motions [for *audita querela* ] pray for the vacation of a criminal conviction rather than a civil judgment and are not ordinary Rule 60(b) motions, . . . we will consider [the] motion as subject for these purposes to the pro-

cedural rules applicable to habeas corpus relief"). The state's argument also finds support in a discernable trend among the circuits to treat motions purporting to rely on Rule 60(b) "as the functional equivalent of a second petition for habeas corpus." *Blair v. Armontrout,* 976 F.2d 1130, 1134 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2357, 124 L.Ed.2d 265 (1993); *Lindsey v. Thigpen,* 875 F.2d 1509, 1511–12, 1515 (11th Cir.1989) (same); *Landano v. Rafferty,* 897 F.2d 661, 668 (3d Cir.) (evaluating Rule 60(b) motion as habeas petition and dismissing on nonexhaustion grounds), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990); *see also Clark v. Lewis,* 1993 WL 232354 (9th Cir. 1993) at *12 (apparently endorsing this ap-

■ The issue of successive or abusive writs is one that is properly addressed before reaching the merits of the claims brought by petitioners. *McCleskey v. Zant*, —— U.S. ——, ——, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); *Sawyer v. Whitley*, 945 F.2d 812, 815 (5th Cir.1991), *aff'd*, —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). As the *McCleskey* Court indicated, the state carries its burden of pleading abuse of the writ "if, with clarity and particularity, it notes petitioner's prior writ history, identifies the claims that appear for the first time, and alleges that petitioner has abused the writ." *McCleskey*, —— U.S. at ——, 111 S.Ct. at 1470. Here, the magistrate raised this issue *sua sponte* before the state had filed its answer, and sent Williams a Rule 9 form detailing his writ history and directing him to explain why the instant petition should not be barred as successive under Rule 9(b). In

response, Williams asserted that his *Taylor* claim should not be dismissed on grounds that the law had substantially changed since his first petition. The district court found this explanation sufficient and reached the merits.

■ On appeal, Williams contends that the district court correctly held that changes in the law made dismissal inappropriate and, in the alternative, that the question whether his petition is successive is not before this court because this issue was raised *sua sponte* by the magistrate rather than pled by the state. We disagree. First, this court has consistently held that "[i]t is entirely proper for the district court to raise on its own motion the issue of a repetitive petition or abuse of the writ." *Schouest v. Whitley*, 927 F.2d 205, 207 (5th Cir.1991). *See, e.g., Andre v. Guste*, 850 F.2d 259, 261–62 (5th Cir.1988); *Mc-*

proach); *Jones v. Murray*, 976 F.2d 169, 172 (4th Cir.1992) (noting that "Jones's Rule 60(b) motion is rather unusual [in that it] raises exactly the same grounds as his prior habeas petition [and seeks the type or relief] ordinarily sought in habeas petitions"). While the law of the circuit is somewhat unsettled, compare, e.g., *Reyes*, 945 F.2d at 864, with, e.g., *May v. Collins*, 961 F.2d 74, 75–76 (5th Cir.1992); *Streetman v. Lynaugh*, 835 F.2d 1521, 1527 (5th Cir.1988), we are inclined to agree with the state that Fulford's motion for reconsideration is best viewed as yet another habeas petition and thus subject to Rule 9(b)'s constraints.

We cannot, however, dismiss Fulford's motion as a successive habeas petition, for the record discloses that this issue was not raised in the district court below. This court has consistently held that dismissal under Rule 9(b) is appropriate only where the "petitioner [is] given specific notice that the court is considering dismissal and given at least 10 days in which to explain the failure to raise the new grounds in a prior petition." *Urdy v. McCotter*, 773 F.2d 652, 656 (5th Cir.1985); *Jones v. Estelle*, 692 F.2d 380, 384–86 (5th Cir.1982). "This court has strictly construed the notice requirement," *Johnson v. McCotter*, 803 F.2d 830, 832 (5th Cir.1986), such that we have held that some form of notice is required even where the successive petition is filed on the eve of execution. *See Hawkins v. Lynaugh*, 862 F.2d 482, 486 (5th Cir.1988) ("In [this] situation, the petitioner should immediately be given an opportunity to respond to the state's claim of writ abuse, either in writing or in oral argument, as time permits"). We have indicated that a district court's failure to afford petitioner notice before dismissal under 9(b) may in certain circumstances be harmless error, see, e.g., *Byrne*

*v. Butler*, 847 F.2d 1135, 1136, 1138 (5th Cir. 1988) (affirming district court's *sua sponte* dismissal without notice apparently on basis of the district court's statement that "the record before the court and jurisprudence indicates that dismissal would be nearly certain"); *Matthews v. Butler*, 833 F.2d 1165, 1170 n. 8 (5th Cir.1987) (where writ abuse raised *sua sponte*, "[f]ailure to notify the petitioner may be harmless error in cases where there are no facts that the petitioner could allege to prevent his claim from being dismissed under Rule 9(b)"). Similarly, some of our cases have held that we may dismiss a habeas petition on Rule 9(b) grounds so long as this issue was raised in the district court below. *See, e.g., id.* at 1169 & n. 7 (court of appeals may affirm on abuse of writ grounds where the issue is in "the record and was adequately raised before [the district court]"); *Williams v. Butler*, 819 F.2d 107, 108 & n. 1 (5th Cir.1987) (affirming on basis of successiveness because "we can properly affirm [district court's] correct decision on any ground urged to it"). But we have never dismissed a petition as successive where, as here, there is no evidence that district court's judgment rested on this basis and the state raised the issue for the first time during oral argument before this court. We do not think it unfair to require the state to assert a Rule 9 bar in the district court when it is the state itself that seeks to characterize a "motion for reconsideration" as a successive habeas petition on appeal. Nor do our precedents supply grounds for relieving the state of this burden on the facts of this case. While we have discretion to remand the case to the district court to afford the state an opportunity to raise the Rule 9 bar, we conclude that in the particular circumstances of this case, such a step is not appropriate.

*Donald v. Blackburn,* 806 F.2d 613, 622 (5th Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2465, 95 L.Ed.2d 874 (1987); *Jones v. Estelle,* 722 F.2d 159, 164 (5th Cir.1983) (en banc), *cert. denied sub nom. Jones v. McKaskle,* 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984). The Supreme Court's clarification of the state's responsibilities in pleading abuse of the writ in *McCleskey* does not affect the validity of this well-established rule. *Woods v. Whitley,* 933 F.2d 321, 323 n. 3 (5th Cir.1991) ("There is no reason to infer that *McCleskey* changed our previous rule that abuse of the writ may be pleaded by the state or raised by the district court *sua sponte*"). *See also McQueen v. Whitley,* 989 F.2d 184 (5th Cir.1993); *United States v. Flores,* 981 F.2d 231, 236 n. 9 (5th Cir.1993). Where, as here, the petitioner is afforded an adequate opportunity to explain why his petition should not be barred as successive or abusive, a district court's decision to raise this issue *sua sponte* will not preclude dismissal under Rule 9(b) if these reasons are found wanting.

■ Williams contends, and the district court agreed, that his petition should be entertained because the law of retroactivity has substantially changed since his first unsuccessful assertion of his *Taylor* claim. This justification, by itself, is plainly insufficient. In keeping with its evident desire to "advance[ ] uniformity in the law of habeas corpus," *Keeney v. Tamayo–Reyes,* —— U.S. ——, ——, 112 S.Ct. 1715, 1720, 118 L.Ed.2d 318 (1992), the Supreme Court extended the "cause and prejudice" test to successive claims in *Sawyer v. Whitley,* —— U.S. ——, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). After *Sawyer,*

> Unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of: (a) *successive claims* which raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised which constitute an *abuse of the writ;* or (c) *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims.

—— U.S. at ——, 112 S.Ct. at 2518 (emphasis in original; citations omitted). Some of our recent decisions have adopted this language. *See Montoya v. Collins,* 988 F.2d 11 (5th Cir.1993) ("Unless a petitioner shows cause and prejudice, a federal court may not reach the merits of successive claims, which raise grounds identical to grounds heard and decided on the merits in a previous petition"); *Selvage v. Collins,* 972 F.2d 101, 102 (5th Cir.1992) (similar); *See also Blair,* 976 F.2d at 1135.

■ We shall assume for purposes of argument that Williams might somehow establish cause (putting aside the *Teague* barrier to reliance on a change in the law). He has not, however, demonstrated the "actual prejudice" that would permit us to reach the merits of his successive *Taylor* claim. Such prejudice is of course presumed where the issue has been preserved; defendants need only prove that members of the community have been unconstitutionally excluded from jury service to obtain a reversal of their convictions. *See Batson v. Kentucky,* 476 U.S. 79, 99–101, 106 S.Ct. 1712, 1725, 90 L.Ed.2d 69 (1986); *Vasquez v. Hillery,* 474 U.S. 254, 261–62, 106 S.Ct. 617, 622–23, 88 L.Ed.2d 598 (1986). On the other hand, where, as here, the constitutional claim is not properly before the court as a result of writ abuse or procedural default, petitioners must identify how the alleged violation harmed their cause. *See, e.g., Huffman v. Wainwright,* 651 F.2d 347, 349–50 (5th Cir.1981) (jury venire); *Evans v. Maggio,* 557 F.2d 430, 433–34 (5th Cir.1977) (grand jury); *Godfrey v. Kemp,* 836 F.2d 1557, 1569–70 (11th Cir.) (jury venire), *cert. dismissed sub nom. Zant v. Godfrey,* 487 U.S. 1264, 109 S.Ct. 27, 101 L.Ed.2d 977 (1988); *Smith v. Kemp,* 715 F.2d 1459, 1470–72 (11th Cir.) (jury venire), *cert. denied,* 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699 (1983). These two lines of cases are not in tension: "The presumption of prejudice which supports the existence of the right is not inconsistent with a holding that actual prejudice must be shown in order to obtain relief from a statutorily provided waiver for failure to assert it in a timely manner." *Davis v. United States,* 411 U.S. 233, 245, 93 S.Ct. 1577, 1584, 36 L.Ed.2d 216 (1973); *Godfrey,* 836 F.2d at 1570 n. 12.

Because "the fair cross section requirement '[does] not rest on the premise that every criminal trial, or any particular trial, [is] necessarily unfair because it [is] not conducted in accordance with [*Taylor*],'" *Teague v. Lane*, 489 U.S. 288, 314–15, 109 S.Ct. 1060, 1077, 103 L.Ed.2d 334 (1989) (quoting *Daniel v. Louisiana*, 420 U.S. 31, 32, 95 S.Ct. 704, 705, 42 L.Ed.2d 790 (1975) (all brackets in original except last)), Williams must demonstrate how the exclusion of women from the jury venire affected his trial. He has not attempted to show that this error rendered the proceedings unfair, nor do we believe, given the very strong evidence supporting his conviction on charges of aggravated rape, that such a finding is warranted. Since Williams has failed to meet the cause and prejudice standard, we may reach the merits of his successive Taylor claim only if he "can show that a fundamental

miscarriage of justice would result from a failure to entertain the claim," *McCleskey*, —— U.S. at ——, 111 S.Ct. at 1470, that is, if Williams advances a "'colorable showing of factual innocence.'" Id. at ——, 111 S.Ct. at 1471 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)). Williams does not contend that he is innocent and in fact appears to have conceded his guilt in prior habeas filings. We therefore must reverse the district court's grant of relief and dismiss his *Taylor* claim as successive.[3]

### III.

As we explained, the state failed to carry its burden of pleading abuse of the writ in Fulford's case in the district court below. His claim that *Griffith* accords him the benefit of *Taylor* is therefore properly before this

---

3. Some courts and commentators have questioned whether the Supreme Court "meant" to extend the cause and prejudice test to successive claims in *Sawyer*. *See, e.g., Campbell v. Blodgett*, 982 F.2d 1321, 1331 (9th Cir.1992); Liebman, *Federal Habeas Corpus Practice and Procedure* 392 (1992 Supp.). While we have no doubts about the Court's opinion in *Sawyer*, we will nonetheless address Williams' claims under the older "ends of justice" test set out in *Sanders* and *Kuhlmann*. Under this approach, a second or subsequent federal habeas petition that fails to raise new or different grounds is subject to dismissal as successive if: (1) the same ground presented in the subsequent application was determined adversely to the applicant on prior application; (2) the prior determination was on the merits; and (3) the ends of justice would not be served by reaching the merits of the subsequent application. *McCleskey*, —— U.S. at ——, 111 S.Ct. at 1466, 113 L.Ed.2d 517 (1991); *Kuhlmann*, 477 U.S. at 448–50, 106 S.Ct. at 2624–25, 91 L.Ed.2d 364 (1986); *Sanders v. United States*, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963); *Young v. Puckett*, 938 F.2d 562, 564 n. 2 (5th Cir.1991); *Moore v. Blackburn*, 806 F.2d 560, 564 (5th Cir.1986), *cert. denied*, 481 U.S. 1042, 107 S.Ct. 1988, 95 L.Ed.2d 827 (1987). We find that each of these elements is met here.

Williams offers little opposition to the state's contention that his present application urges the same ground for relief asserted in his first federal petition and that our prior rejection of this claim was on the merits. Williams now, as then, maintains that he is entitled to a new trial because women were excluded from the jury venire in violation of *Taylor*'s dictates. It is of no moment that he now phrases his claim in terms of *Griffith* and *Leichman*, for "[a] petitioner may not create a different ground merely by alleging different facts, asserting different legal theories, or couching his argument in different language." *Camp-*

*bell*, 982 F.2d at 1326 (citing *Sanders*, 373 U.S. at 16, 83 S.Ct. at 1077). The same "ground" may subsume several distinctive legal theories, and the rule that a new ground will not be barred as successive "does not allow the reassertion of claims for the sole reason that petitioner has now thought of another argument in support of the same claim." *Johnson v. McCotter*, 803 F.2d 830, 833 (5th Cir.1986). For this reason, we examine successive petitions with care in order to determine whether petitioners raising purportedly new claims have merely recast the ground for relief submitted in their first application. *See, e.g., Montoya v. Collins*, 988 F.2d 11 (5th Cir.1993) (dismissing petitioner's "newly-fashioned version of his Sixth Amendment claim" as a "variant of the issue that the state and federal courts have previously rejected"); *May v. Collins*, 948 F.2d 162, 166 (5th Cir.1991) ("Our analysis of May's present petition convinces us that [his] attempt to advance a Sixth Amendment claim ... amounts to no more than a reargument of the Eighth Amendment claim that was considered and rejected in his first round of federal habeas"), *cert. denied*, —— U.S. ——, 112 S.Ct. 907, 116 L.Ed.2d 808 (1992); *McDonald*, 806 F.2d at 621 (similar). Williams' petition clearly does not advance a new ground for relief under this standard.

This court's rejection of Williams' *Taylor* claim in 1980 on grounds that *Daniel* precluded us from giving that decision any retroactive effect was also a "prior determination on the merits." Williams' claim was properly raised in his first petition, received plenary consideration, and was denied because he was not entitled to prevail under applicable Supreme Court precedent. Even if we were to assume that a court's denial of a constitutional claim on the basis of nonretroactivity is properly characterized as "procedural" rather than "substantive," such labels are not dispositive in ascertaining whether this rejection was on the merits. As the Ninth Circuit, in holding that the dismissal of a prior petition on

court and, in light of *Leichman v. Secretary*, 939 F.2d 315 (5th Cir.1991), entitles him to relief. We view this case as indistinguishable from *Leichman* in all respects and grant the writ accordingly. For the reasons suggested below, however, we do not find the analysis adopted by the panel in *Leichman* wholly persuasive and urge this court to consider this issue en banc.

Fulford's argument is deceptively simple. At the time of his trial, Louisiana law granted women an automatic exemption from jury service; as a result, his jury was comprised only of men. While his case was pending on direct appeal, the Supreme Court in *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), struck down Louisiana's exclusionary practice as a violation of defendants' Sixth Amendment rights. While the Court immediately held that the *Taylor* would not be applied retroactively in *Daniel v. Louisiana*, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), the Court has since overruled the approach to retroactivity employed

in *Daniel* in *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). This new standard provides that defendants, whether on direct appeal or collateral review, should be given the benefit of any rules announced while their cases were "on direct review or not yet final." *Griffith*, 479 U.S. at 328, 107 S.Ct. at 716; *Teague*, 489 U.S. at 310, 109 S.Ct. at 1075. Because *Taylor* was decided while his appeal was pending before the Louisiana Supreme Court, Fulford concludes, *Griffith* and *Teague* entitle him to receive the benefit of this rule and, since the merits of his claim are undisputed, a writ of habeas corpus. This is essentially the reasoning adopted by the panel in *Leichman.*[4]

We cannot disagree that habeas courts should " 'apply the law prevailing at the time a conviction became final.' " *Teague*, 489 U.S. at 305–06, 109 S.Ct. at 1072 (quoting *Mackey v. United States*, 401 U.S. 667, 682, 91 S.Ct. 1160, 1175, 28 L.Ed.2d 404) (Harlan, J.)). Fulford's petition relies on a selective

the analogous ground of procedural default was "on the merits," stated:

> While a court, in dismissing a petition because of state procedural default (and a failure to show cause and prejudice), is *not* determining the merits of the underlying claims, it *is* making a determination on the merits that the underlying claims *will not* be considered by a federal court for reasons of comity. Such a determination should be considered "on the merits" for purposes of the successive petition doctrine.

*Howard v. Lewis*, 905 F.2d 1318, 1322 (9th Cir. 1990) (emphasis in original; citations omitted). *See Gray v. Lucas*, 710 F.2d 1048, 1057 (5th Cir.), *cert. denied*, 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983); *Shaw v. Delo*, 971 F.2d 181, 184 (8th Cir.1992). Thus, while the issue of retroactivity is often spoken of as a "threshold question" that must be decided apart from "the merits," see, e.g., *Saffle v. Parks*, 494 U.S. 484, 486–88, 110 S.Ct. 1257, 1259–60, 108 L.Ed.2d 415 (1990); *Teague v. Lane*, 489 U.S. 288, 299–301, 109 S.Ct. 1060, 1069–1070, 103 L.Ed.2d 334 (1989), a habeas court's rejection of a constitutional claim on this basis must be regarded as a "prior determination on the merits" in examining whether a subsequent petition is successive. Williams' *Taylor* claim is plainly one that has already been decided on the merits.

Finally, the ends of justice would not be served by entertaining Williams' successive petition. Williams argues that the district court properly addressed the substance of his *Taylor* claim because the law of retroactivity has changed since his first federal habeas petition. This analysis is not in accord with precedents, requiring a color-

able showing of innocence before concluding that the ends of justice would warrant an adjudication of successive constitutional claims: "If the petitioner raises a claim that a federal court has already considered in a previous habeas corpus petition, we may review the merits of the successive claim only when 'the prisoner supplements his constitutional claim with a colorable showing of factual innocence.' " *Sawyer*, 945 F.2d at 815 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)); *Andre v. Guste*, 850 F.2d 259, 262 n. 3 (5th Cir.1988) (noting that "the claim raised by Andre, even if it were of constitutional dimensions, 'does not itself create any question as to his guilt or innocence' " (quoting *Kuhlmann*, 477 U.S. at 455, 106 S.Ct. at 2628)); *Williams v. Lynaugh*, 837 F.2d 1294, 1295 (5th Cir.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 605 (1989); *McDonald*, 806 F.2d at 621–22 & n. 9. *See also Campbell*, 982 F.2d at 1331 ("The 'ends of justice' permit us to entertain successive claims only where a petitioner supplements his constitutional claims with a 'colorable showing of factual innocence' ") (quoting *Kuhlmann*); *Blair v. Armontrout*, 976 F.2d 1130, 1135 (8th Cir.1992) (the Supreme Court's decision in *Sawyer* "ended all questions about the status of the plurality opinion in *Kuhlmann*")). As we indicated above, Williams has not even attempted to make the requisite showing of actual innocence. For this reason, his petition would be dismissed as successive under *Kuhlmann* as well.

4. The *Leichman* court held:
> The law regarding retroactivity changed drastically when the court decided *Griffith v. Ken-*

application of this principle, however, for the governing law at the time his conviction became final included not only *Taylor*, a decision he wishes to invoke, but also *Daniel*, a decision he seeks to escape. Fulford's claim that he is entitled to the benefit of *Taylor* thus rests on the largely unstated premise that *Griffith* and *Teague* "overruled" *Daniel*, such that questions of *Taylor*'s applicability are now controlled by the general principles enunciated in those cases rather than *Daniel*'s specific holding.

■ We do not believe that this treatment of *Daniel* is justified. First, absent clear indications from the Supreme Court itself, lower courts should not lightly assume that a prior decision has been overruled *sub silentio* merely because its reasoning and result appear inconsistent with later cases. As Judge Mentz pointed out below, the Court issued a reminder to this effect only a few years ago in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989): "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Id.* at 484–85, 109 S.Ct. at 1921–22; *see also id.* at 486, 109 S.Ct. at 1923 (Brennan, J., dissenting) (describing anticipatory overruling as "an indefensible brand of judicial activism"). Here, the application of *Griffith* to *Taylor* seems especially unwarranted, for the Court has given no indication that *Daniel* is no longer good law. To the contrary, it appeared to endorse the decision in *Teague* itself by citing and quoting *Daniel* with evident approval. *See Teague*, 489 U.S. at 317, 109 S.Ct. at 1079 (quoting *Daniel*, 420 U.S. at 32, 95 S.Ct. at 705). In these circumstances, our role as an inferior court counsels restraint, even it the result otherwise appears inescapable.

The conclusion that Fulford's *Taylor* claim should be governed by *Griffith* rather than

*Daniel* is far from obvious, however. While *Taylor* was handed down before Fulford's conviction became final, *Griffith* most assuredly was not. The question, then, is whether *Griffith*, which undoubtedly established a new rule, should be available to petitioners whose cases were not on direct appeal at the time of the decision. Put another way, why should Fulford receive the benefit of *Griffith* when it is undisputed that *Teague* bars him from relying on any other rules governing criminal proceedings announced after his conviction became final? The answer must be that *Griffith* did not announce a new rule, but the path to this conclusion is not readily discernible. Like other rules subject to the *Teague* bar, the retroactivity test adopted in *Griffith* appears to enjoy constitutional status. *Griffith*, 479 U.S. at 322, 107 S.Ct. at 713 ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"). Moreover, *Griffith* cannot be distinguished on grounds that questions of retroactivity do not formally govern the conduct of trials, for *Teague* is not necessarily limited to new rules of criminal procedure. *See, e.g., Saffle v. Parks*, 494 U.S. 484, 488–89, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990) (rule is new unless a court "would have felt compelled by existing precedent to conclude that the rule [petitioner] seeks was required by the Constitution"); *Teague*, 489 U.S. at 306, 109 S.Ct. at 1073 (" 'it is sounder, in adjudicating habeas petitions, generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation' ") (quoting *Mackey v. United States*, 401 U.S. 667, 689, 91 S.Ct. 1160, 1178, 28 L.Ed.2d 404 (Harlan, J.)).

Finally, one might argue that *Griffith* should receive retroactive application because courts have given this effect to the comparable rule established in *Teague*, pointing out that the same assertions of surprise

---

tucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) and *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Under *Teague*, controlling authority in the habeas context, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules

are announced." *Id.* at 310, 109 S.Ct. at 1075. Because Leichman's conviction did not become final until six days after *Taylor* was decided, he is entitled to the benefit of the *Taylor* decision.
939 F.2d at 317 (footnote omitted).

and good-faith reliance voiced by the state in this case went unrecognized when offered on behalf of habeas petitioners after *Teague*. *See, e.g., Sawyer v. Butler*, 881 F.2d 1273, 1305 (5th Cir.1989) (King, J, dissenting) ("If any case should be considered as having established a new rule not retroactively applicable to habeas petitioners whose convictions have become final, it is *Teague* itself"), *aff'd*, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990). The argument for symmetrical treatment of *Griffith* and *Teague* has superficial appeal, but it is foreclosed by *Lockhart v. Fretwell*, —— U.S. ——, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

Questions of retroactivity cannot be examined in a vacuum but must be addressed with reference to the " 'nature, function, and scope of the adjudicatory process in which such cases arise.' " *Teague*, 489 U.S. at 306, 109 S.Ct. at 1072 (quoting *Mackey*, 401 U.S. at 682, 91 S.Ct. at 1175 (Harlan, J.)). The Court in *Fretwell* confirmed that *Teague* "was motivated by a respect for the States' strong interest in the finality of criminal convictions, and the recognition that a State should not be penalized for relying on 'the constitutional standards that prevailed at the time the original proceedings took place." —— U.S. at ——, 113 S.Ct. at 844 (quoting *Teague*, 489 U.S. at 306, 109 S.Ct. at 1073). The retroactive application of *Teague* but not *Griffith* is consistent with these purposes, since a habeas petitioner's reliance interests typically do not approach those of the state and he simply "has *no* interest in the finality of the state court judgment under which he is incarcerated." *Fretwell*, —— U.S. at ——, 113 S.Ct. at 844 (emphasis added). These differences warrant differential treatment of retroactivity, such "that the State will benefit from our *Teague* decision in some federal habeas cases, while the habeas petitioner will not." *Id.*

We have strong reservations concerning the *Leichman* panel's decision, but are bound by it. We do urge that this grant of relief to Fulford and the holding of *Leichman* be reconsidered by the court en banc.

## IV.

We reverse the grant of relief to Williams and remand to the district court with instructions that the petition be dismissed. We reverse the denial of relief to Fulford and remand the case to the district court with instructions to order the state either to try Fulford again within 180 days or release him.

REVERSED and REMANDED.

ON SUGGESTION FOR REHEARING EN BANC

July 20, 1993.

Before: POLITZ, Chief Judge, KING, GARWOOD, E. GRADY JOLLY, PATRICK E. HIGGINBOTHAM, W. EUGENE DAVIS, EDITH H. JONES, JERRY E. SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the suggestion for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.