**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 92-3319
_____

ROBERT WILKERSON,

                                        Petitioner-Appellant,


VERSUS

JOHN P. WHITLEY,
Warden, Louisiana State Penetentiary,
and
RICHARD P. IEYOUB,
Attorney General, State of Louisiana,

                                        Respondents-Appellees.



_____

Appeal from the United States District Court
for the Middle District of Louisiana
_____


(January 31, 1994)

Before HENDERSON,[*] SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


Robert Wilkerson was convicted of second-degree murder in 1973. That conviction was overturned by the Louisiana Supreme Court because Wilkerson was shackled and gagged during trial. He was retried and again convicted and sentenced to life imprisonment in 1975. Fourteen years later, he filed for post-conviction relief

_____

[*] Circuit Judge of the Eleventh Circuit, sitting by designation.

in state court, claiming that several constitutional violations occurred at his second trial. The trial court denied relief, and the Louisiana Supreme Court denied writs in 1991.

Having exhausted his state remedies, Wilkerson brought a habeas corpus action in federal district court. The magistrate judge recommended that relief be denied, and the district court adopted that recommendation. Because we find that Wilkerson was indicted by a grand jury that unconstitutionally excluded women, we reverse and remand to the district court with instructions to grant a writ of habeas corpus. We do so on the basis of circuit precedent that we now recommend be overruled en banc.

I.

Wilkerson and his codefendant, Grady Brewer, currently inmates at the Louisiana State Penitentiary, were indicted in September 1973 by a West Feliciana Parish, Louisiana, grand jury. They moved to quash the indictment on the ground that there were no women on the grand jury venire or on the grand jury that indicted them.[1] Their motion was denied, a trial jury found them guilty, and they were sentenced to life imprisonment. On their initial appeal, the Louisiana Supreme Court affirmed the conviction and sentence of Brewer but reversed as to Wilkerson and remanded for a new trial. State v. Brewer, 301 So. 2d 630 (La. 1974) (finding no error in

---

[1] At the time of Wilkerson's trial, the state constitution provided that "no woman shall be drawn for jury service unless she have previously filed with the clerk of the District Court a written declaration of her desire to be subject to such service." LA. CONST. art. VII, § 41 (repealed effective Jan. 1, 1975).

indictment, but deciding that trial court committed reversible error in shackling Wilkerson and taping his mouth shut during trial).

Wilkerson's second trial (on the same indictment) began in January 1975. He was represented by the same attorney in both trials. Again he was convicted, and he appealed.

On appeal, Wilkerson urged several assignments of error, including the improper seating of a grand juror, an erroneous trial court ruling limiting the scope of his cross-examination of a witness, denial of a motion for a directed verdict, and denial of a motion for change of venue. The Louisiana Supreme Court affirmed the conviction but did not revisit the previously denied motion to quash the grand jury venire. State v. Wilkerson, 326 So. 2d 353 (La. 1976). Before that court ruled on the second appeal, however, the United States Supreme Court had decided Taylor v. Louisiana, 419 U.S. 522 (1975), holding that Louisiana's jury selection system excluding women and blacks from petit jury venires violated the Sixth and Fourteenth Amendments, and Daniel v. Louisiana, 420 U.S. 31, 32 (1975), holding that Taylor would not be applied retroactively to "convictions obtained by juries empaneled prior to the date of [Taylor]."

In February 1989, Wilkerson filed an application for post-conviction relief in the state trial court. He raised five issues: (1) He was denied his Sixth and Fourteenth Amendment rights because of the exclusion of women from jury service, including the panel from which his grand jury was drawn; (2) an unqualified juror was

3

seated on the grand jury; (3) he was denied his right to cross-examine fully a witness against him; (4) the decision to handcuff and shackle him during his second trial prejudiced the jury; and (5) his trial counsel was ineffective for (a) failing to reurge the previously denied motion to quash the indictment based upon the exclusion of women, (b) failing to raise a motion to quash the indictment based upon the unqualified juror, and (c) failing to object to the handcuffing and shackling during the second trial, which was arguably in violation of the Louisiana Supreme Court's decision in Brewer.

The trial court denied the petitioner's post-conviction relief on March 10, 1989. The Louisiana Supreme Court denied writs on May 17, 1991. Wilkerson v. Smith, 580 So. 2d 370 (La. 1991). Wilkerson then sought habeas relief in federal district court. The magistrate judge recommended that relief be denied, and the district court adopted that recommendation.

II.

Wilkerson argues that he should have the benefit of the rule announced in Taylor declaring Louisiana's jury selection system unconstitutional, because the decision was announced before his direct appeal was final. Because we are bound by circuit precedent to apply Taylor retroactively under the rule announced in Teague v. Lane, 489 U.S. 288 (1989), we must grant Wilkerson habeas relief.

In Leichman v. Secretary, La. Dep't of Corrections, 939 F.2d 315, 317 (5th Cir. 1991) (per curiam), a panel of this court held

4

that a habeas petitioner could take advantage of the rule announced in Taylor before his direct appeal was final because "[t]he law regarding retroactivity changed drastically when the court decided Griffith v. Kentucky, 479 U.S. 314 (1987), and Teague v. Lane, 489 U.S. 288 (1989)."  That panel did not consider the implications of applying Teague retroactively; it merely appeared to assume that it could do so.[2]

Although bound by Leichman to grant habeas relief, another panel in Williams v. Whitley, 994 F.2d 226 (5th Cir. 1993), suggested that Daniel should still control the application of Taylor.  As the Williams panel recommended, see id. at 236, we elected to rehear Williams en banc sub nom. Fulford v. Whitley, see Williams, id. at 236, to decide this issue, but the case was mooted by the petitioner's death.  Thus, we are still bound to follow Leichman on this issue, but we acknowledge the arguments set out in Williams against applying Taylor retroactively and, for the reasons set forth in Williams, we urge en banc review.


                              III.

Wilkerson's second claim is based upon a violation of state law.  He alleges that a member of the grand jury that indicted him was not domiciled in West Feliciana Parish.  As we have stated, however, "`[W]e do not sit as "super" state supreme court' in a habeas corpus proceeding to review errors under state law."

---

[2] Daniel determined that Taylor should not apply retroactively. Griffith and Teague changed the law of retroactivity but did not determine whether the new law of retroactivity should itself be applied retroactively.

5

<u>Cronnon v. Alabama</u>, 587 F.2d 246, 250 (5th Cir.) (citations omitted), <u>cert. denied</u>, 440 U.S. 974 (1979); <u>Cook v. Morrill</u>, 783 F.2d 593, 596 (5th Cir. 1986). As Wilkerson's claim does not present any federal constitutional violations, we need not address it.[3]

### IV.

Wilkerson contends that he was not given an opportunity fully to cross-examine William Riley, the eye-witness to the murder. Wilkerson wanted to question Riley regarding any possible bias he might have based upon Riley's transfer from a lockdown area after testifying against Wilkerson in the first trial.[4] The trial court limited the cross-examination of Riley on the subject of bias to whether he had received anything in exchange for his testimony. Questions about Riley's transfer or the letters he had written were not permitted. Other than that limitation, though, Wilkerson had a thorough opportunity to cross-examine the witness.

Where the admission of evidence is concerned, on habeas corpus review the standard is whether the state court's evidentiary ruling was sufficiently egregious to render the trial fundamentally unfair. <u>Edwards v. Butler</u>, 882 F.2d 160, 164 (5th Cir. 1989). Although "cross-examination must be permitted into any incentive

---

[3] The state's brief claims that the juror in question was actually domiciled in West Feliciana Parish. He was a construction worker temporarily living outside the parish. The brief claims that this juror did not intend to abandon his domicile and that in Louisiana, "the critical element in determining place of residence is intent." <u>State v. Kennedy</u>, 8 Rob. 590 (La. 1845).

[4] Riley had written several letters to prison administrators regarding his transfer and his decision to testify for the state.

the witness may have to falsify his testimony," <u>Evans v. McCotter</u>, 790 F.2d 1232, 1241 (5th Cir.) (citing <u>Davis v. Alaska</u>, 415 U.S. 308, 317 (1974)), <u>cert. denied</u>, 479 U.S. 922 (1986), Wilkerson never alleged that Riley's testimony was falsified.

The ruling was designed to prevent the jury from learning that Wilkerson previously had been convicted of the same offense (Riley's letters indicated that he had testified in Wilkerson's first trial.). Furthermore, the jury could infer from the transfer that the witness was moved to protect him from Wilkerson. Thus, the limitation on cross-examination was designed to avoid prejudicing the defendant.

Riley witnessed the murder from a distance of four to five feet and testified that he saw Wilkerson stab the victim twice in the chest. Wilkerson was permitted to inquire into whether Riley received anything in exchange for his testimony and into other possible motivations for bias. The trial court's limitation on cross-examination about the letters and the transfer was not so great as to render the trial fundamentally unfair or to deprive Wilderson of his Sixth Amendment right to confront witnesses against him.

V.

Wilkerson's fourth claim is based upon the trial court's decision to handcuff and shackle him during the second trial, despite the reversal of his conviction after the first trial based upon the shackling and taping of his mouth. While a criminal

defendant is entitled to the physical indicia of innocence, a court is justified in ordering him handcuffed and shackled during trial where there is a danger of escape or injury to the jury, counsel, or other trial participants. See Patterson v. Estelle, 494 F.2d 37 (5th Cir.), cert. denied, 419 U.S. 871 (1974).

The parish sheriff testified that it was the practice to shackle only dangerous prisoners. As there was no evidence that Wilkerson was an escape risk or would have been dangerous or disruptive, the court was not justified in handcuffing and shackling Wilkerson during his second trial. Nevertheless, the error was harmless. See Buchanan v. Kentucky, 483 U.S. 102 (1987) (applying harmless error standard to Fifth and Sixth Amendment violations).

The jury knew Wilkerson was an inmate and convicted felon and could have assumed that all inmates were tried in handcuffs and shackles. Furthermore, given the eye-witness testimony of Riley, it is unlikely that the result would have been different if Wilkerson had not been handcuffed and shackled.


VI.

Wilkerson's last claim is that his trial counsel was ineffective for (1) failing to reurge the previously denied motion to quash the indictment based upon the exclusion of women, (2) failing to raise a motion to quash the indictment based upon the unqualified juror, and (3) failing to object to the handcuffing and shackling during the second trial. To show that a criminal

8

defendant received ineffective assistance of counsel, he must show (1) that counsel's performance was in some way deficient and that (2) the deficiencies were prejudicial so that, but for the errors, there is a reasonable probability that the result would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984). A reasonable probability is one sufficient to undermine confidence in the outcome. If the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, the defendant's ineffective assistance claim must fail. Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir.), cert. denied, 493 U.S. 831 (1989).

Wilkerson's three claims are meritless. First, the motion to quash the indictment had already been made and rejected. Taylor could not have been applied retroactively at that time, and Wilkerson made no showing that the presence of a woman on the grand jury would have affected his conviction. Second, the issue of the grand juror's domicile had been rejected in the first appeal, and it would not have changed the trial result. Third, the failure to object to the handcuffing and shackling,[5] even if the failure was error, did not affect the accuracy of the outcome. The evidence against Wilkerson was overwhelming; none of his claims amounts to a serious constitutional issues.

---

[5] It is not evident from the record whether the attorney formally objected.

9

## VII.

Because we are bound by <u>Leichman</u>, we REVERSE the denial of habeas relief and REMAND to the district court with instructions to order the state either to try Wilkerson again within 180 days or to release him.  Nevertheless, we urge that this grant of relief and the holding of <u>Leichman</u> be reconsidered by the court en banc.