**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-40146

DAVID ALLEN CASTILLO,

Petitioner-Appellant,

versus

GARY JOHNSON, DIRECTOR,
Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

May 11, 1998

Before JONES, SMITH and STEWART, Circuit Judges.

STEWART, Circuit Judge:

On March 2, 1998, three days prior to his scheduled execution date, David Allen Castillo filed in this court three applications for stay of execution and a motion for appointment of substitute counsel. On March 3, 1998, Castillo filed a motion for stay of execution and application for certificate of probable cause to appeal the denial of his federal habeas corpus petition by the district court. Following a telephone conference with counsel, the panel majority granted a temporary stay of execution pending full review of the motion for stay and application for certificate of probable cause. The court's written order filed on March 4, 1998 correctly reflects the grant of the stay of execution; however, the briefing order directed the parties to brief the merits of the habeas claim on an expedited schedule.

As correctly noted by the State of Texas, we now consider only the application for certificate of probable cause. Because the briefing is comprehensive as to all issues raised by Castillo, we deem the case submitted without oral argument.

Finding that Castillo has not made a substantial showing of the denial of a federal right with regard to any of his claims raised on appeal, we hereby DENY the application for certificate of probable cause and VACATE the stay of execution.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Castillo's conviction and sentence of death arose from the robbery at knife point of the Party House liquor store in Mercedes, Texas on July 14, 1983. The victim, Clarence Champion, was stabbed several times in the course of the holdup. After several operations, Champion died a few days later at a local hospital. The doctor performing the autopsy determined that despite other secondary complications, the clear cause of Champion's death was the stab wounds inflicted during the robbery.

Castillo was arrested on July 25, 1983, and charged in a separate aggravated robbery and knifing assault on local shopkeeper Reynaldo Garza. The state then began an investigation of Castillo's possible connection to the Party House robbery. Detective Narciso Vargas searched Castillo's room at the home of his father and seized a pair of blue jeans and socks that appeared to have bloodstains on them. On August 7, 1983, Vargas searched the room that Castillo occupied from time to time in the home of his cousin, Pedro Garcia. On August 8, 1993, Pedro Garcia's wife—Lucinda Garcia—called Vargas to report the discovery of a bloodstained T-shirt and two bank bags full of checks and receipts in a hallway closet of her home. Pedro Garcia admitted that sometime after the night of July 14th, Castillo gave him $200 in cash.

Castillo was arrested on July 25th for the aggravated robbery of Garza. He was indicted for the Garza robbery on August 11, 1983. Having served eight months of his sentence in the Garza case, Castillo was indicted on March 21, 1984 for the murder of Clarencio Champion during the course of committing robbery. Trial before a jury commenced on June 19, 1984, and on July 16,

2

1984, the jury found Castillo guilty as charged. After a separate hearing on punishment, the jury on July 17, 1984 affirmatively answered the two special issues submitted to it pursuant to former Article 37.071(b) of the Texas Code of Criminal Procedure. Accordingly, punishment was assessed at death.

Castillo's conviction and sentence were automatically appealed to the Texas Court of Criminal Appeals, which affirmed on September 30, 1987, and denied rehearing on November 4, 1987. Castillo sought post-conviction relief. The trial court held an evidentiary hearing on five of the twenty-four issues raised in Castillo's state habeas petition. On October 19, 1990, the convicting court entered factual findings and legal conclusions, recommended that relief be denied, and forwarded the application for writ of habeas corpus to the Texas Court of Criminal Appeals, which denied habeas relief and a stay of execution on November 13, 1990.

In November of 1990, Castillo filed his habeas petition in the federal district court, which stayed his execution. On July 10, 1997, the district court denied Castillo's request for habeas relief.[1] Castillo's execution date was scheduled for January 14, 1998. On January 12, 1998, Judge Juan Partida issued an order withdrawing the prior order scheduling Castillo's execution. By separate order entered the following day, Judge Partida scheduled Castillo's execution for March 5, 1998. Castillo filed an application for certificate of probable cause in federal district court on January 28, 1998. He filed a notice of appeal on February 5, 1998. The federal district court denied certificate of probable cause on February 11, 1998.

---

[1]It is important to note that Castillo's request for habeas relief was pending at the time of the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(e) (1996) ("AEDPA"). Though the district court originally relied on the AEDPA in denying Castillo's request for federal habeas relief, it later modified its order to follow the Supreme Court's instruction in Lindh v. Murphy, -- U.S. -- , 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Because he filed his habeas petition in the district court in November 1990, before the effective date of the AEDPA, Castillo's appeal is governed by the scheme of habeas corpus law that prevailed before the AEDPA's enactment. In Lindh, the Court held that the AEDPA's standard for reviewing petitions by state prisoners, codified at 28 U.S.C. § 2254(d), does not apply retroactively to petitions filed before April 24, 1996. Prior Fifth Circuit authority had been to the contrary. See Drinkard v. Johnson, 97 F.3d 751, 764-67 (5th Cir. 1996), cert. denied, 117 S.Ct. 1114 (1997). The district court found that even when viewed in light of the appropriate pre-AEDPA standards, Castillo's claims were without merit and did not entitle him to federal habeas relief.

On March 2, 1998, Castillo filed in this court three applications for stay of execution and a motion for appointment of substitute counsel. On March 3, 1998, Castillo filed a motion for stay of execution and certificate of probable cause application. This court granted a stay of execution pending review of the merits and ordered expedited briefing. Castillo filed his brief on March 16, 1998. The State filed its brief on March 23, 1997.

STANDARD OF REVIEW

In Baldree v. Johnson, 99 F.3d 659, 660 (5th Cir. 1997), this court reiterated the well-settled principle that "[a] petitioner must first obtain a Certificate of Probable Cause in order for jurisdiction to vest with this court." For a certificate of probable cause to issue, Castillo must make a "substantial showing of the denial of a federal right." Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983). Specifically, Castillo "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are 'adequate to deserve encouragement to proceed further.' " Id. at 893 n. 4, 103 S.Ct. at 3394 n. 4.

DISCUSSION

Castillo raises three issues before this court in support of his request for federal habeas corpus relief. He argues that: 1) the state of Texas was allowed to rely on a per se bar to the admission of relevant exculpatory and mitigating polygraph evidence; 2) exculpatory information known by the prosecution was withheld from defense counsel in violation of the Fourteenth Amendment and Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and 3) the presentation of victim impact testimony and argument violated the Eighth and Fourteenth Amendments. We find that Castillo does not assert claims that warrant redress through federal habeas corpus relief. We analyze each of his contentions in turn below.

I.

Castillo first argues that the trial court violated his federal constitutional rights by excluding testimony relating to the results of a polygraph examination of Rudolfo Rodriguez, an early suspect

4

in the Champion murder, at Castillo's trial.  He urges that Texas' mechanistic rule of per se polygraph exclusion violates his right to due process and the fundamental right to present a defense.  Castillo insists that he sought to introduce at trial evidence of a failed polygraph examination that inculpated Rodriguez.  Castillo contends that such evidence was crucial to his defense as it directly contradicts the State's theory of the case.

In support of these arguments, Castillo relies on the Supreme Court's opinion in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and this court's opinion in <u>United States v. Posada</u>, 57 F.3d 428 (5th Cir. 1995).  As the state indicates in its response, however, neither of the aforementioned cases purported to address the issue of the admissibility of polygraph evidence in the context of federal constitutional law.  Accordingly, neither case recognizes a federal constitutional right to admit polygraph evidence.          The shortcomings of Castillo's argument are further underscored by the Supreme Court's recent holding regarding the admission of polygraph evidence and federal constitutional rights.  Castillo himself draws our attention to <u>United States v. Scheffer</u>, --- S.Ct. ---, 1998 WL 141151 (March 31, 1998), a case involving a per se rule against the admission of polygraph evidence that was under review by the Supreme Court at the time Castillo submitted his brief.  The Supreme Court recently held in <u>Scheffer</u> that a per se rule against admission of polygraph evidence did not violate the Fifth or Sixth Amendment rights of the accused to present a defense.[2]  The <u>Scheffer</u> Court wrote that

> state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve."  <u>Id.</u> at *3 (internal citations omitted).

---

[2]The <u>Scheffer</u> case arose from the question of whether Military Rule of Evidence 707, which makes polygraph evidence inadmissible in court-martial proceedings, unconstitutionally abridges the rights of accused members of the military to present a defense.  Though the case arose in a military context, the Court's disposition of the federal constitutional claims raised by Scheffer is equally applicable to the claims raised by Castillo.

5

Under Texas law, "results of a polygraph test are inadmissible *for all purposes*." Netherly v. State, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985), cert. denied, 474 U.S. 1110. 106 S.Ct. 897 (1986) (emphasis in original). The trial court excluded the evidence Castillo sought to introduce on this basis. As the Scheffer Court indicates, states are entitled to such latitude in establishing evidentiary rules.[3] Castillo's claim challenging the exclusion of evidence based on state law thus does not afford a basis for federal habeas corpus relief. Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law. Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978, 113 S.Ct. 2977 (1993). As the Scheffer Court noted, "[s]tate and federal governments unquestionably have a legitimate interest in ensuring that reliable evidence is presented to the trier of fact in a criminal trial. Indeed, the exclusion of unreliable evidence is a principal objective of many evidentiary rules." Id. at *4 (internal citations omitted). We hold that the trial court's exclusion of polygraph evidence based on state law did not violate Castillo's federal constitutional rights.

## II.

Castillo contends that the district court erred in concluding that the state did not withhold material, exculpatory evidence at trial, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), either: 1) by failing to identify a "Crime Stoppers" informant who testified before the grand jury but did not testify at trial; 2) by failing to disclose the grand jury testimony of trial witnesses; or 3) by failing to disclose the victim's hospital records in a timely fashion. Under Brady, the prosecution's suppression of material evidence favorable to the accused after the defendant's request to examine such material violates the defendant's Fourteenth Amendment guarantee of due process. Id. at 87, 83 S.Ct. at 1196-97. To be entitled to federal habeas relief on this claim, Castillo must prove that: 1) the prosecutor suppressed or withheld evidence 2) which was

---

[3]The Scheffer Court noted the lack of scientific consensus on the reliability of polygraph evidence as well as the disagreement among state and federal courts concerning its admissibility. Id. at *4. The Court noted that against this background, the President's adoption of Military Rule of Evidence 707 was a rational means of advancing the legitimate interest of barring unreliable evidence. Id. at *5.

favorable and 3) material to the defense. <u>Moore v. Illinois</u>, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972); <u>Wilson v. Whitley</u>, 28 F.3d 433, 435 (5th Cir. 1994). We hold that the district court was correct in its determination that Castillo failed to satisfy these elements with regard to the identified evidence.

## A.

Castillo claims that the prosecution violated <u>Brady</u> by failing to disclose the identity of the "Crime Stoppers" informant who first identified Castillo as the murderer and who testified before the grand jury that indicted Castillo. Castillo insists that the informant, Oscar Garcia, was in possession of exculpatory evidence, which could have been developed by the defense if Garcia had been identified. Castillo also contests the state's failure to produce at the time of trial a transcript of Garcia's grand jury testimony, which he argues contains exculpatory evidence.

The record indicates that the State disclosed the existence of a "Crime Stoppers" informant without revealing his identity during a pretrial hearing. Castillo's attorney requested that the trial court review in camera any statement made by the informant to determine its materiality. Oscar Garcia did not testify at trial and Castillo did not raise the issue again until post-conviction proceedings.

We thus hold that Castillo's <u>Brady</u> claim fails with reference to Oscar Garcia. Under <u>Brady</u>, the prosecution has no obligation to produce evidence or information already known to the defendant, or that could be obtained through the defendant's exercise of reasonable diligence. <u>Brown v. Cain</u> 104 F.3d 744, 750 (5th Cir.), <u>cert. denied</u> 117 S.Ct. 1489 (1997). Further, the record indicates that some of the undisclosed information provided by Oscar Garcia was known to the petitioner prior to trial. Indeed, the state habeas court found that Garcia's affidavit was included in the police offense reports which were disclosed to the defense. Because the defense had access to, if not complete knowledge of this information, Castillo's <u>Brady</u> claim is without merit.

## B.

7

Castillo also claims that the prosecutor failed to reveal prior inconsistent statements in the form of grand jury transcripts, by some of the state's key witnesses in violation of <u>Brady</u>. We find that Castillo has failed to demonstrate that such statements were materially inconsistent.

The record indicates that Castillo filed pretrial motions requesting that the grand jury testimony of trial witnesses be transcribed and turned over to the defense. The trial judge ordered that the grand jury proceedings be transcribed, but ultimately determined that he would examine the witnesses' grand jury transcripts in camera and order that they be made available to the defense if material inconsistencies were found between the witnesses' trial testimony and their grand jury testimony. Finding no significant conflict between the trial testimony and the grand jury testimony of the relevant witnesses, the court never ordered that any of the transcripts be made available to the defense. The district court found that the defense never pursued the production of the transcripts. Accordingly, any failure by the defense to obtain the transcripts was not due to any obstruction by the State.

## C.

Castillo's final <u>Brady</u> claim is that the prosecutor improperly withheld the victim's hospital records from the defense until the first day of trial.

The record indicates that Castillo sought production of all medical reports relevant to the decedent's condition at or about the time of the commission of the alleged offense. The record also bears out that the prosecution allowed defense counsel to review its relevant files, but that neither party was in possession of the hospital records. At the trial court's suggestion, the prosecutor issued a subpoena for the hospital records before the trial began. Such records were produced and made available to both parties before the beginning of the trial.

Accordingly, we find that Castillo has failed to show that the state withheld any material, exculpatory evidence in violation of <u>Brady</u>.

## III.

8

Castillo's final argument is that the court below erred in failing to grant habeas relief based on the admission of testimony by the victim's wife, Odilia Champion, at the guilt-innocence phase of trial. He notes that though the Supreme Court in Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), authorized states to allow victim impact evidence as a measure of harm to be admitted in the guilt phase of a capital case, it did not perfunctorily approve the introduction of such evidence at the guilt/innocence phase of trial. Castillo contends that the Texas Court of Criminal Appeals has announced specific vehicles for the introduction of such evidence. See Ford v. State, 919 S.W.2d 107, 115 (Tex. Crim. App. 1996). In Ford, the Texas court held that as a matter of state law, victim-impact evidence is inadmissible at the punishment phase unless the instructions include a special issue on mitigation. Castillo argues that because the court did not offer such an instruction, the introduction and ensuing argument regarding victim impact evidence violates his constitutional rights pursuant to both the Eighth and Fourteenth Amendments.

The district court correctly noted that the Eighth Amendment erects no per se bar to the admission of victim impact evidence or prosecutorial argument on that topic. See Payne, 501 U.S. at 827, 111 S.Ct. at 2609. The Payne Court recognized that only where such evidence or argument is unfairly prejudicial may a court prevent its use through the Due Process Clause of the Fourteenth Amendment. Id. at 825, 111 S.Ct. at 2608 (citing Darden v. Wainwright, 477 U.S. 168, 179-183, 106 S.Ct. 2464, 2470-2472, 91 L.Ed.2d 144 (1986)). Castillo has failed to show that such evidence and argument were unfairly prejudicial.

Though Castillo fails to meet the standard as articulated in Payne, we also note that he is not entitled to relief under his claim that he failed to receive the special issue instruction under Texas law. As the state correctly notes in its brief, such a claim does not state a basis for federal habeas corpus relief. As we noted above, federal habeas review is limited to errors of constitutional proportions. Thus, in reviewing state court evidentiary rulings, the federal habeas court's role "is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness" under the Due Process Clause. Andrade v. McCotter, 895 F.2d 1190, 1193 (5th Cir. 1986)

9

(internal quotation omitted). Castillo has not demonstrated that the admission of such testimony affected the fundamental fairness of his trial and thus is not entitled to federal habeas relief on this claim.

## CONCLUSION

After careful review of Castillo's claims, the state's response, and the record of the proceedings below, we find that Castillo has failed to make a substantial showing of the denial of a federal right. Accordingly, we DENY his application for certificate of probable cause and VACATE the stay of execution.