# UNITED STATES COURT OF APPEALS
# FIFTH CIRCUIT

_____

No. 02-10050

_____

JUAN RODRIGUEZ CHAVEZ,

Petitioner - Appellant,

versus

JANIE COCKRELL, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent - Appellee.

Appeal from the United States District Court
For the Northern District of Texas

October 29, 2002

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Petitioner-Appellant Juan Rodriguez Chavez seeks a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253(c), to appeal the district court's denial of his 28 U.S.C. § 2254 habeas petition. Chavez argues that he was denied the presumption of innocence and the right to an impartial jury when the "stun belt" that he was forced to wear during trial inadvertently activated in the presence of the jury. Because we find that Chavez has failed to make a substantial showing of the

denial of a constitutional right, we deny his request for a COA.

I

Chavez was convicted and sentenced to death for the murder of Jose Morales during the course of committing or attempting to commit a robbery in 1996. Prior to the commencement of his trial, the court held a hearing to determine whether Chavez should be required to wear a stun belt in the courtroom.[1] Based on testimony from multiple sources indicating that Chavez was planning to escape during his trial by disarming an officer and shooting his way out of the building, the trial judge approved the use of a stun belt on Chavez. At trial, the stun belt was hidden under Chavez's clothing and was not visible to the jury. However, during the first day of testimony, the stun belt inadvertently activated, causing Chavez to stand up, say "it's shocking me. . .," and slump over the table. The jurors were immediately excused from the courtroom, and Chavez was examined by medical personnel. That same day, the judge held a hearing in which he heard testimony establishing that the stun belt had activated through no fault of Chavez or either of the two certified stun belt operators present in the courtroom. Chavez's counsel then moved for a mistrial. The following day, the trial court separately questioned each individual juror to determine what he or she had witnessed, and if the juror's impartiality had been impaired by the incident. Seven of the twelve jurors correctly assumed that Chavez had been affected by some type of restraining device, although not all of them

---

[1]A stun belt, also known as a security belt, delivers a 50,000 volt electrical shock to the wearer when activated. Several courts have explicitly approved the use of stun belts to restrain defendants during trial. *See Hawkins v. Comparet-Cassani,* 251 F.3d 1230, 1242 (9th Cir. 2001) (holding that stun belts can be used for security purposes, but not to control courtroom disruption); *United States v. McKissick*, 204 F.3d 1282, 1299 (10th Cir. 2000) (allowing use of stun belt when necessary to prevent disruption of the trial); *United States v. Brooks,* 125 F.3d 484, 502 (7th Cir. 1997) (approving use of stun belts on defendants who posed a significant risk of violence or escape); *United States v. Edelin*, 175 F. Supp. 2d 1, 7-8 (Dist. D.C. 2001) (holding stun belts can be used to maintain courtroom order and security).

could ascertain the specific cause.[2] Two other jurors believed he had been shocked but had no idea what caused the incident. The three remaining jurors noticed a commotion but did not know the cause. All of the jurors stated that they believed they could remain fair and impartial following the incident. The court then determined that Chavez's presumption of innocence had not been impaired, and denied defense counsel's motion for a mistrial. Specifically, the trial judge made the following finding:

> I find that while varying degrees of perception was as [sic] indicated by the record showed that the jurors saw or heard something, I find that which they recall having happened in no way would impinge or infringe upon the presumption of innocence guaranteed to Mr. Chavez under the constitution and laws of the State of Texas and the United States.

At the conclusion of the trial, Chavez was found guilty and sentenced to death.

Chavez's conviction and sentence were affirmed on direct appeal, and his application for state habeas relief was denied. Chavez then filed a federal habeas application asserting twenty grounds for relief. The district court determined that nineteen of these claims were procedurally barred, but considered Chavez's claim relating to the inadvertent activation of the stun belt. In this claim, Chavez specifically argued that he was denied the presumption of innocence and due process under the Fourteenth Amendment when the stun belt activated in the presence of the jury. The district court concluded that Chavez's presumption of innocence claim was barred as a new rule of constitutional law under *Teague v. Lane*, 489 U.S. 288 (1989), but nonetheless addressed the entire claim on the

---

[2]The alternate juror, not included in the total above, also assumed that Chavez was wearing some type of restraint that activated.

merits.[3] *Chavez v. Cockrell*, No. Civ. A. 3:00-CV-2202-D, 2001 WL 1609347 at *3 (N.D. Tex. Dec. 12, 2001). The district court ultimately held that because the Texas state court's adjudication of Chavez's claim was not objectively unreasonable, habeas relief should not be granted. *Id.* at *7. Chavez now seeks a COA to appeal the district court's ruling.

II

Chavez's 28 U.S.C. § 2254 habeas petition, filed in 2001, is subject to the limiting provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA, a petitioner must obtain a COA before he can appeal the district court's decision. 28 U.S.C. § 2253(c)(1). A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to make a substantial showing, a petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In assessing whether the petitioner has been denied a constitutional right, a reviewing court must defer to the state court's determination unless its decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). A decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially

_____

[3]Because the respondent did not argue that Chavez's due process argument was *Teague*-barred before the district court, the court addressed the entire claim.

indistinguishable facts." *Williams*, 529 U.S. at 412-13. An application of federal law is unreasonable if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

III

Chavez argues that the inadvertent activation of his stun belt in the presence of the jury denied him the presumption of innocence. "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). The physical appearance of a defendant while in the presence of the jury may adversely affect the presumption of innocence. *Id.* at 504 (noting that defendant's appearance before the jury may "affect a juror's judgment" because prison clothing serves as a "constant reminder of the accused's condition"). Courts do, however, have an obligation to "protect the court and its processes, and to attend to the safety and security of those in the courtroom." *United States v. Nicholson*, 846 F.2d 277, 279 (5th Cir. 1988) (upholding use of plainclothes deputies sitting next to defendant at trial). Thus, the Supreme Court has held that binding and gagging an "obstreperous defendant" is permissible when necessary to maintain courtroom order. *Illinois v. Allen,* 397 U.S. 337, 343-44 (1970). In addition, a defendant may be shackled "to preserve the dignity of the trial and to secure the safety of its participants." *Marquez v. Collins*, 11 F.3d 1241, 1244 (5th Cir. 1994); *see also Fountain v. United States,* 211 F.3d 429, 436 (7th Cir. 2000) (holding that a defendant may be shackled in the presence of the jury in cases of "extreme need," when "necessary to maintain the security of the courtroom"). Defendants thus may be handcuffed to prevent escape and to prevent injury to others in the courtroom. *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994); *Hernandez v. Beto*, 443 F.2d 634, 636 (5th Cir. 1971); *see also United States v.*

*Collins*, 109 F.3d 1413, 1417-18 (9th Cir. 1997) (upholding use of shackles in case where defendant poses legitimate flight risk). The use of such restraints, however, is subject to close judicial scrutiny. *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986). In addition, the restraints must further a legitimate interest of the state. *Id.* at 571-72 (upholding presence of four uniformed state troopers in courtroom during defendants' trial when deployment was "intimately related to the State's legitimate interest in maintaining custody during the proceedings"); *Estelle*, 425 U.S. at 505 (concluding prison clothing is prejudicial when it furthers no "essential state policy").

In this case, the trial court specifically determined before trial that Chavez was a flight risk and that the use of the stun belt was necessary. Based on the evidence presented at the separate hearing establishing that Chavez posed a legitimate risk of flight, we believe that it was within the trial court's discretion to visibly restrain Chavez. *Marquez,* 11 F.3d at 1244 (noting state trial judge has discretion to order restraints when necessary). Therefore, because the trial court could have permitted the use of *visible* restraints at Chavez's trial, we do not believe that the jury's momentary glimpse of the *effects* of the stun belt denied Chavez the presumption of innocence.

Moreover, we note that the trial judge in this case took steps to mitigate any prejudicial influence on the jury. *See, e.g.*, *United States v. Pina*, 844 F.2d 1, 8 (1st Cir. 1988) (finding jurors' exposure to defendant while in handcuffs was not prejudicial after judge questioned jurors and they insisted they could remain impartial). After Chavez received the shock, the trial judge quickly cleared the courtroom, and held two hearings to ascertain whether the incident unduly prejudiced the proceedings. In the first, the judge interviewed the court security officers to determine what caused the activation of the stun belt. In the second, he separately questioned each individual juror to gauge his or her reaction to the incident, and to see if the juror would be able to remain fair and impartial.

-6-

We believe the trial judge's actions survive close scrutiny. *Holbrook*, 475 U.S. at 568. Therefore, because the stun belt incident at Chavez's trial did not create "an unacceptable risk. . .of impermissible factors coming into play," we deny his request for a COA on this issue. *Id.* at 570.

Finally, to the extent that Chavez is arguing that the mere fact that his restraint activated in front of the jury violates his constitutional rights, that claim is barred by *Teague*. *Teague*, 489 U.S. at 301 (holding that a petitioner proceeding on collateral review may not obtain relief based on rules of constitutional law that were not announced at the time his conviction became final). In order to overcome the *Teague* bar, Chavez must show that a court considering his claim at the time his conviction became final in September 1999 would have felt compelled to conclude that activation of a stun belt in the jury's presence impaired his right to the presumption of innocence. *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997); *see also Lambrix v. Singletary*, 520 U.S. 518, 538 (1997) (stating that a rule is not new, for purposes of *Teague*, when *no other* interpretation of existing precedent could be reasonable) (emphasis in original). Although Chavez cites several cases discussing a defendant's right to the presumption of innocence, none of the cited cases actually dictate the rule he seeks.[4] Nor can we find any cases compelling reversal of a conviction based on the accidental

---

[4]To support his argument that his claim is not *Teague*-barred, Chavez has cited cases from "a long line authority" guaranteeing defendants the right to the presumption of innocence. *See, e.g., Chandler v. Florida*, 449 U.S. 560, 574 & 582 (1981) (stating that courts must "guard against any impairment of the defendant's right to a verdict based solely upon the evidence and the relevant law" in the context of media trial coverage); *Taylor v. Kentucky,* 436 U.S. 478, 490 (1978) (holding that trial court's failure to give requested instruction on presumption of innocence resulted in violation of defendant's right to a fair trial); *Estelle*, 425 at 512-13 (holding that forcing defendant to wear prison clothing violated his right to presumption of innocence); *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966) (holding extensive media coverage deprived defendant of a fair trial "by an impartial jury free from outside influences"). None of the cases cited by Chavez, however, *dictate the rule* that a jury's accidental viewing of a defendant's restraints (or in this case, viewing the effects of such restraints) impairs the presumption of innocence.

triggering of a stun belt in the presence of the jury where the impact on the jury was harmless. As a result, we conclude that Chavez's claim suggests a new rule of constitutional law that is barred by *Teague*.[5]

IV

Chavez also contends that the accidental activation of the stun belt deprived him of his right to an impartial jury. The respondent, however, argues that Chavez waived this claim by failing to raise it in his habeas petition before the district court. *E.g.*, *Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001) (stating that issues not raised in habeas proceedings before the district court can not be considered on appeal). In response, Chavez asserts that his impartial jury claim was raised before the state and district courts because it was encompassed within his presumption of innocence argument.[6] Whether or not Chavez is permitted to raise this claim as a distinct argument, we nonetheless find it unavailing on the merits.

A defendant is entitled to a "jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). In evaluating claims of juror partiality, we

---

[5]There are two exceptions to the *Teague* bar, neither of which applies to Chavez's claim. They are: (1) new rules that place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe"; and (2) "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994); *Daniel v. Cockrell*, 283 F.3d 697, 708 (5th Cir. 2002) (describing second exception as those rules "implicit in the concept of ordered liberty"). The first exception does not apply because the rule sought does not decriminalize the crime for which Chavez was ultimately convicted. The second exception similarly does not apply because a narrow rule concerning stun belt activation does not "alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Tyler v. Cain*, 533 U.S. 656, 665 (2001) (emphasis in original).

[6]We note that this impartial jury argument was separately raised in Chavez's FED. R. CIV. P. 59 motion for a new trial or for amendment of judgment following the district court's denial of his 28 U.S.C. § 2254 habeas petition.

must consider whether the jurors in a given case had "such fixed opinions that they could not judge impartially the guilt of the defendant." *Patton v. Yount*, 467 U.S. 1025, 1035 (1984) (discussing prejudicial impact of adverse pre-trial publicity). The trial court's determination as to juror impartiality can be overturned only for "manifest error." *Id.* at 1031. Here, Chavez argues that the incident created an "unfavorable impression" of him in the minds of the jurors, and might have indicated to them that he was a flight risk or that he was violent. He points to statements made by certain jurors at the hearing following the stun belt incident to argue that at least some jurors were prejudiced against him.[7] He argues that the absence of an instruction from the trial judge as to the cause of the incident magnified these problems, even though he concedes that his trial attorney deliberately did not request such an instruction.

We find Chavez's claim of juror partiality unavailing. First, we note that the trial judge conducted an extensive inquiry following the incident to determine whether the jurors could remain impartial. The judge and trial counsel questioned each juror individually about the incident, including any conclusions the juror might have drawn from it. After doing so, the judge specifically concluded that the jurors could remain impartial. Moreover, both the state appellate court and the

state habeas court considered whether the jurors at Chavez's trial had been prejudiced by the incident, and both concluded that the incident had no bearing on the jurors' ultimate decision to convict. In doing so, these courts looked at affidavits completed by all the jurors in April 1996, shortly after the conclusion of the trial, and also at two juror affidavits obtained in August 1998. None of these documents persuaded the reviewing courts that the jurors had been unduly prejudiced by the stun belt

---

[7]In particular, Chavez focuses on statements in which jurors hypothesize that Chavez might be wearing a restraining device due to a risk of flight, and statements evidencing a belief that Chavez himself triggered the stun belt.

incident. We do not believe this conclusion is manifestly erroneous. Nor are we convinced that any of Chavez's jurors drew conclusions from the activation of the stun belt that raised a "presumption of partiality." *Murphy v. Florida*, 421 U.S. 794, 800 (1975). The statements here do not in any way indicate that the jurors could not render a fair and impartial verdict based on the evidence. *Compare Morgan v. Illinois*, 504 U.S. 719, 729 (1992) (holding a juror "who will automatically vote for the death penalty in every case" is not impartial), *and Parker v. Gladden*, 385 U.S. 363, 363-65 (1966) (holding bailiff's statements to juror, "Oh that wicked fellow [petitioner], he is guilty,"and "if there is anything wrong [in finding petitioner guilty] the Supreme Court will correct it," involved so high a probability of prejudice that relief was warranted), *with Mu'Min v. Virginia*, 500 U.S. 415, 431-32 (1991) (holding that trial court's failure to question potential jurors about relevant news coverage did not justify overturning its finding of impartiality). Therefore, because Chavez has failed to demonstrate that the state court's conclusions as to juror impartiality are unreasonable, we also deny his request for a COA in regard to this claim.

V

In sum, we hold that Chavez has failed to make a substantial showing of the denial of a constitutional right. We therefore DENY his request for a COA.