**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 18, 2004**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 03-41487

LONNIE WAYNE PURSLEY,

Petitioner-Appellant,

versus

DOUG DRETKE, Director,
Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas,
(C.A. No. 9:01-CV-211)

Before SMITH, DEMOSS and, STEWART, Circuit Judges.

PER CURIAM:[*]

The petitioner, Lonnie Pursley ("Pursley"), appeals from the district court's denial of his

petition for habeas corpus and subsequent application for certificate of appealability ("COA").

Pursley's application for COA is DENIED.

---

[*]Pursuant to 5ᵀᴴ CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 14, 1999, Lonnie Wayne Pursley was convicted of capital murder for the death of Robert Earl Cook ("Cook"). The evidence at trial established that on the night of March 28, 1997, Cook left work and drove down Highway 59 towards his trailer home near Livingston, Texas. The evidence further establishes that Cook was on Highway 59, probably at about the same time that Pursley was walking down that highway, after leaving from his in-law's house on foot following an argument with his wife. Cook's niece and next-door neighbor, Sheila Dupree, testified that later that night she observed a large man smoking a cigarette in the doorway of Cook's trailer home. Dupree stated that Cook sat inside with an emotionless expression on his face and that she could tell from looking at Cook that something was wrong. The following day, March 29, Dupree noticed that the gate on Cook's property was not shut properly and that Cook's car was gone. Although Cook had plans to spend time with his mother that day, he never showed up. When Cook still had not returned home by the evening of March 30, his mother contacted the police, who began searching for Cook the next day. Upon learning that Cook was missing, Dupree told the police about the man that she had seen standing in Cook's doorway.

Meanwhile, several of Pursley's friends and relatives saw Pursley driving a turquoise car matching the description of Cook's vehicle on the morning of March 29 and the following day. At least three of these witnesses noticed that the vehicle had blood on the inside and outside of it, and that Pursley had blood on his clothes. At least two witnesses later testified that Pursley had admitted to them that he had beaten someone and had left the victim to choke on his own blood. Pursley's cousin, Richard Winfrey, testified that on March 30, Pursley told him that he was pretty sure he had beaten someone to death in his car. Pursley told Winfrey that he had hidden the victim's car in some

woods located off of a dirt road and asked him for fake identification so that he could leave the country.

On April 6, 1997, a passer-by discovered Cook's decomposing body lying face down in a wooded area at the end of a dead-end dirt road, approximately 2.5 miles from Cook's home. Trauma to the body indicated that Cook had been pummeled brutally in the chest and abdomen with he assailant's hands, feet, or with some other unknown object. On April 15, 1997, the police discovered Cook's car abandoned in a wooded area. There was a large amount of blood spattered throughout the vehicle.[1]

Pursley was arrested and charged by indictment for the murder and robbery of Cook. On January 14, 1997, the jury found Pursley guilty, and later answered Texas' capital murder special issues in a manner that required the trial court to sentence Pursley to death. Pursley's conviction and sentence were appealed automatically to the Texas Court of Criminal Appeals, which affirmed on January 31, 2001, and denied rehearing on March 28, 2001. Pursley did not file a petition for writ of certiorari to the U.S. Supreme Court. On July 31, 2001, Pursley filed a state application for post-conviction relief, which the Court of Criminal Appeals dismissed based on its determination that the trial court's conclusions were supported by the record. Ex Parte Pursley, No. 49, 634–01, slip. op. at 2 (Tx. Crim. App. June 27, 2001). Pursley filed a motion requesting that the Texas Court of Criminal Appeals reconsider its order dismissing his state habeas application. The Court of Criminal Appeals denied this request and the trial court set an execution date. On September 12, 2001, this Court granted Pursley's motion to stay his execution.

On June 27, 2002, Pursley filed his § 2254 petition for writ of habeas corpus in the federal

---

[1] The only DNA evidence linking Pursley to the crime was on a cigarette butt found in the ashtray of the victim's vehicle eighteen months after the car was discovered by the police.

district court. The district court rejected Pursley's four assignments of error and declined to grant Pursley's request for a COA.

Pursley now seeks a COA from this Court on the following claims of error: (1) whether the district court erred in concluding that Pursley was not denied his Eighth Amendment and due process rights to a fair trial when victim impact evidence was presented by the state during the guilt-innocence phase; and (2) whether the district court erred in concluding that Pursley was not denied his federal constitutional rights to a fair trial and a presumption of innocence when the trial court ordered him to appear during voir dire in shackles and handcuffs, and further compounded the error when the trial court excluded him from being present during individual voir dire.

## DISCUSSION

Pursley's § 2254 habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See Penry v. Johnson, 532 U.S. 782, 792 (2001). AEDPA requires that Pursley obtain a COA before he can appeal the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(1) (2000); Slack v. McDaniel, 529 U.S. 473, 478 (2000). Thus, "until a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." Miller-El v. Cockrell, 537 U.S. 322, 326 (2003).

To obtain a COA, the petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2000); Miller-El, 537 U.S. at 336; Slack, 529 U.S. at 483. More specifically, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 336 (quoting Slack, 529 U.S. at 484).

In Miller-El, the Supreme Court instructed that "a COA ruling is not the

4

occasion for a ruling on the merits of petitioner's claim[.]" Id. at 331. Instead, this Court's determination must be based on "an overview of the claims in the habeas petition and a general assessment of their merits." Id. at 336. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Id. This Court does not have jurisdiction to justify its denial of a COA based on an adjudication of the actual merits of the claims. Id. Accordingly, this Court cannot deny an "application for a COA merely because [it believes] the applicant will not demonstrate an entitlement to relief." Id. "[A] claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." Id.

I.      Victim impact testimony.

Pursley first seeks a COA based on his claim that the trial court's admission of victim impact testimony during the guilt-innocence phase of his trial violated his Eighth and Fourteenth Amendment rights. Specifically, Pursley argues that he was denied his due process right to a fair trial when the state questioned witness Sechrest Godfrey regarding an evening when Cook stopped on the road to help her change a flat tire. Pursley's counsel objected to the testimony, asserting that the testimony "had the victim changing a tire on someone's car for just the purpose of being a nice guy and doesn't have any sense of relevance." The prosecution countered that the evidence was relevant to show that Cook stopped on the road to assist strangers, and that this fact made it more likely that Cook picked up Pursley on the side of the road. The state trial court agreed, and overruled Pursley's objection.

On direct appeal, Pursley contended that the trial court's admission of Godfrey's testimony violated Texas Rule of Evidence 404 (a) (2), which provides in pertinent part that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving action in

5

conformity therewith on a particular occasion." Pursley also argued that the "true" purpose for which the prosecution offered this testimony was to show Cook's good character in order to make Pursley comparatively more "death worthy." The Texas Court of Criminal Appeals denied relief, concluding that the prosecution did not offer this testimony to establish Cook's good character, but rather "elicited the testimony to bolster the State's theory that the victim offered [Pursley], an apparent stranger, a ride on the night of the murder." The Court of Criminal Appeals also concluded that "the trial court could have admitted the testimony to show the victim's habit or routine of stopping and offering assistance to strangers on the highway."

On federal habeas review, the district court concluded that the Court of Criminal Appeals' decision that the testimony constituted admissible Rule 406 "habit" evidence, rather than victim impact evidence, was not "unreasonable." The district court alternatively concluded that even assuming the testimony at issue constituted victim impact evidence, the admission of that evidence did not violate Cook's Eighth or Fourteenth Amendment rights. Although finding that the evidence was inadmissible as victim impact evidence, we nonetheless agree with the district court's conclusion that admission of the evidence did not violate Cook's Eighth or Fourteenth Amendment rights.

As an initial matter, contrary to the views of the Court of Criminal Appeals and the district court, the record shows that Godfrey's testimony cannot be deemed evidence of habit pursuant to Texas Rule of Evidence 406. Under both Texas' evidentiary rules and the Federal Rules of Evidence, "habit" refers to a specific reaction to a specific set of stimuli that is reflexive, repeated, and invariable in nature. By contrast, as indicated above, Godfrey's testimony referred to <u>one</u> instance involving operative facts that are dissimilar from the action which the prosecution sought to establish -- namely, that Cook stopped and picked up a hitchhiker on the night he was murdered. Nonetheless, "in reviewing state court evidentiary rulings, the federal habeas court's role 'is limited to determining

6

whether a trial judge's error is so extreme that it constituted denial of fundamental fairness" under the Due Process Clause'" of the Fourteenth Amendment. Castillo v. Johnson, 141 F.3d 218, 222, 224 (5th Cir. 1998) (instructing that "[f]ederal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law").

Similarly, as the district court correctly pointed out, even assuming that Godfrey's testimony did constitute *victim impact* evidence, the admission of such evidence does not violate the Fourteenth Amendment unless the evidence introduced "is so unduly prejudicial that it renders the trial fundamentally unfair." Payne v. Tennessee, 501 U.S. 808, 824 (1991) (recognizing that "[i]n the majority of cases, . . . victim impact evidence serves entirely legitimate purposes").[2] Accordingly, regardless of whether the testimony at issue is properly categorized as character, habit, or victim impact evidence, the same analysis applies in determining whether Pursley is entitled to habeas relief on this claim.

In this case, the record indicates that Cook was brutally murdered at the hands of a stranger; that the killer had spent some time with Cook in his home on the night of the murder, and that he later killed Cook in his own car before leaving the body in a wooded area. The record also indicates that at about the same time that Cook left work and drove down Highway 59, Pursley was most likely walking down the same road. The State's theory was that Cook saw Pursley walking alongside the road and stopped his car to offer Pursley a ride. Because the average person probably would not pick up a hitchhiker at night, the State sought to elicit testimony that it would not be unusual for Cook to

---

[2]Although Payne considered the use of victim impact testimony during the penalty phase of a capital case, this Court also adheres to Payne's fundamental fairness standard in cases involving a challenge to victim impact evidence introduced during the guilt-innocence phase. See Castillo, 141 F.3d at 223-24.

do so. Cook's sister, his mother, and a friend of Cook all testified that they knew that Cook would stop and help people on the road or offer them rides. Defense counsel did not object to this testimony, and in fact, asked certain witnesses whether they knew if Cook ever picked up hitchhikers. Given the brutality of the murder and the fact that similar testimony of other witnesses (offered without objection) indicated that Cook was known to help people on the highway, we find that Godfrey's testimony was merely cumulative of other evidence and did not "inflame [jurors'] passions more than did the facts of the crime" so as to deny Pursley a fundamentally fair trial. See Payne, 501 U.S. at 832 (O'Connor, J., concurring). Under these circumstances, reasonable jurists could not debate or find wrong the district court's conclusion that the admission of Godfrey's testimony did not violate Pursley's Eighth or Fourteenth amendment rights.

II.     Physical restraints and exclusion from individual voir dire.

Pursley next seeks a COA based on his claim that the district court erred in concluding that the state trial court's order that Pursley be restrained in shackles and handcuffs during voir dire, and the trial court's exclusion of Pursley from individual voir dire, did not deny Pursley his constitutional rights to a fair trial and a presumption of innocence. This claim is of no avail.

"The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." Estelle v. Williams, 425 U.S. 501, 503 (1976); accord, Chavez v. Cockrell, 310 F.3d 805, 808 (5th Cir. 2002). As the Supreme Court and this Court have recognized, "[t]he physical appearance of a defendant while in the presence of the jury may adversely affect the presumption of innocence." Chavez, 310 F.3d at 808 (citing Estelle, 425 U.S. at 504 (noting that a defendant's appearance before the jury may "affect a juror's judgment" because prison clothing serves as a "constant reminder of the accused's condition")). Nonetheless,

8

courts "have an obligation 'to protect the court and its processes, and to attend to the safety and security of those in the courtroom.'" Id. at 808-809 (citing United States v. Nicholson, 846 F.2d 277, 279 (5th Cir. 1988)). Accordingly, the Supreme Court has upheld the binding and gagging of an "obstreperous defendant" when necessary to maintain courtroom order. Illinois v. Allen, 397 U.S. 337, 343-44 (1970), and this Court has likewise held that a defendant may be shackled and/or handcuffed to prevent escape, to preserve the dignity of the trial, and to secure the safety of its participants." Marquez v. Collins, 11 F.3d 1241, 1244 (5th Cir. 1994) (upholding use of shackles in presence of jury); Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (upholding use of handcuffs in presence of jury). "The use of such restraints, however, is subject to close judicial scrutiny." Chavez, 310 F.3d at 808 (citing Holbrook v. Flynn, 475 U.S. 560, 568 (1986)). Moreover, to be permissible, the use of restraints "must further a legitimate interest of the state." Id.; see, e.g., Holbrooke, 475 U.S. at 571-72 (ruling that presence of four uniformed state troopers in courtroom during defendant's trial was constitutionally permissible where their deployment was "intimately related to the State's legitimate interest in maintaining custody during the proceedings"); cf. Estelle, 425 U.S. at 505 (concluding jurors' exposure to defendant in prison clothing is prejudicial when it furthers no "essential state policy").

In this case, Pursley has not shown that reasonable jurists could debate whether the state courts erred in concluding that the use of handcuffs and shackles or his exclusion from the courtroom during individual voir dire violated his constitutional rights on the facts presented. As the State points out, in this case the state trial court specifically determined that if Pursley were not shackled during voir dire, he would present a danger to himself and others in the courtroom. The trial court made this determination following a hearing that was convened to consider the State's motion requesting that

the defendant be shackled for the duration of the trial because it had received information that Pursley intended to obtain a weapon and attack one of the prosecutors. At the hearing, the State introduced the statements of three witnesses: inmates Kimberley Pace and Felton Adkison, and Investigator Frank Shipley. The testimony revealed that Pursley attempted to have Pace retrieve a razor blade so that he could "cut the DA's throat" to ensure that he got the death penalty. The State also introduced letters between Pace and Adkison that discussed Pursley's intentions. Investigator Shipley testified that a razor blade was found secreted in the location Pace had described, corroborating Pace's statements. Finally, Pace also testified that Pursley had requested that Pace retrieve a knife for him from the courthouse during one of his court appearances. Based on this evidence that Pursley posed a legitimate risk to the safety of himself and others in court, we find that it was within the state trial court's discretion to restrain Pursley. See Chavez, 310 F.3d at 809 (concluding that visibly restraining the defendant with a stun belt was within the state trial court's discretion where the defendant posed a legitimate flight risk); Marquez, 11 F.3d at 1244 (noting state trial judge has discretion to order restraints when necessary).

Importantly, however, Pursley *never appeared* before the jury in shackles and handcuffs during voir dire. The record indicates that prior to voir dire, Pursley was taken back to jail, where he was permitted to change into his prisoner uniform. When it was time to return to the courthouse, however, Pursley refused to change back into his civilian clothes. At the request of defense counsel, the trial court agreed to allow Pursley to view the voir dire from a holding cell in the courthouse via closed-circuit TV. Pursley was given the choice between attending jury selection in his civilian clothes or watching the selection via closed circuit TV, and Pursley opted to view the jury selection on TV. At the conclusion of each prospective juror's individual voir dire, defense counsel was

10

permitted to consult with Pursley. Moreover, at the start of each day of individual voir dire, defense counsel asked Pursley whether he wanted to wear his civilian clothing and attend the jury selection, or remain in his jail-issued clothing in the holding cell. Pursley chose to remain in the holding cell throughout the jury selection process.

The crux of Pursley's argument, therefore, is that the state trial court failed to use the "least restrictive means" necessary to ensure the safety of the trial participants. As the district court correctly pointed out, "it is not a question of whether, looking back, lesser restraints might have been adequate, although that is relevant. Rather, it is a question of whether it was reasonable at the time to conclude that the restraint was necessary." Marquez, 11 F.3d at 1244. As stated above, we believe it was reasonable at the time for the state trial court to conclude that the restraint was necessary. Moreover, the state trial court had taken steps to ensure that the jurors would not see Pursley in shackles to eliminate any prejudicial effect the restraints might otherwise have had on the jury. Immediately following the hearing on the restraints, floor length black skirts were placed around the counsel tables for the defense and the prosecution. Pursley was to be brought into the courtroom and seated between his attorneys at counsel table before the jury panel entered the courtroom, and was to exit the courtroom after the jury had left. On federal habeas review, the district court found that had Pursley been present and restrained during individual voir dire, the skirting of the tables and the positioning of Pursley between counsel would have minimized the chance that the jury panel would have seen him. Because the state trial court could have permitted the use of visible restraints at trial, Pursley has not shown that reasonable jurists could debate whether the state courts erred in concluding, under these facts, that he had not been denied his constitutional rights to a fair trial and a presumption of innocence. See Chavez, 310 F.3d at 809. Accordingly, the state trial judge's

11

actions "survive close scrutiny."  See id.  (citing Holbrook, 475 U.S. at 568).

## CONCLUSION

Because Pursley has not made a substantial showing that he was been denied a constitutional right, or that reasonable jurists could debate whether his petition for habeas corpus should have been resolved differently, his request for a COA is DENIED; the order of the district court denying Pursley's petition for habeas corpus is hereby AFFIRMED.